UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

TRACKMAN, INC.,                          :
                                         :
                    Plaintiff,           :    Case No. 1:23-cv-000598-NRB
                                         :
        v.                               :    **ANSWER AND COUNTERCLAIM**
                                         :
GSP GOLF AB d/b/a GSPRO and DAVOR        :
BOGAVAC,                                 :
                                         :
                    Defendants.          :

-------------------------------------------------------------X

GSP GOLF AB d/b/a GSPRO and DAVOR        :
BOGAVAC,                                 :
                                         :
                    Counterclaim Plaintiffs,    :
                                         :
        v.                               :
                                         :
TRACKMAN, INC,                           :
                                         :
                    Counterclaim Defendant.     :

-------------------------------------------------------------X

## ANSWER

For its answer and counterclaim to TrackMan, Inc.'s ("TrackMan") complaint,

defendants GSP Golf AB d/b/a GSPro ("GSP") and Davor Bogavac ("Bogavac") (together,

"Defendants" or "Counterclaim Plaintiffs") hereby respond, allege, and aver, on knowledge as to

their own acts and otherwise on information and belief, as follows:

### THE PARTIES

1.      Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations in Paragraph 1 of the complaint and, on that basis, deny them.

2.      Admitted.

3.      Denied.

## JURISDICTION AND VENUE

4.     Defendants admit that this Court has subject matter jurisdiction over TrackMan's claims for relief arising under the United States Copyright Act, and that diversity jurisdiction and/or supplemental jurisdiction is vested over the remaining claims, but denies that TrackMan can sustain any claim ultimately to support such jurisdiction.

5.     Denied.

6.     Denied.

7.     Denied.

8.     Denied.

9.     Denied.

## TrackMan

10.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the complaint and, on that basis, deny them.

11.     Defendants admit that TrackMan's offerings include launch monitors, simulators, and driving range solutions. Defendants lack knowledge or information sufficient to form a belief about the truth of any and all remaining allegations in Paragraph 11 of the Complaint and, on that basis, deny them.

## TrackMan Launch Monitors

12.     Admitted.

13.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the complaint and, on that basis, deny them.

14.     Defendants deny that "TrackMan launch monitors are the gold standard in ball tracking for golf professionals." Defendants lack knowledge or information sufficient to form a

belief about the truth of the remaining allegations in Paragraph 14 of the complaint and, on that basis, deny them.

15.     Defendants lack knowledge or information sufficient to form a belief about the truth of any and all remaining allegations in Paragraph 15 of the complaint and, on that basis, deny them.

## TrackMan Simulator

16.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 of the complaint and, on that basis, deny them.

17.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 of the complaint and, on that basis, deny them.

18.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 of the complaint and, on that basis, deny them.

19.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 of the complaint and, on that basis, deny them.

20.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 of the complaint and, on that basis, deny them.

## TrackMan Range

21.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 of the complaint and, on that basis, deny them.

22.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the complaint and, on that basis, deny them.

23.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the complaint and, on that basis, deny them.

## **TrackMan Software**

24.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the complaint and, on that basis, deny them.

25.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 of the complaint and, on that basis, deny them.

26.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 of the complaint and, on that basis, deny them.

27.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 of the complaint and, on that basis, deny them.

28.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 of the complaint and, on that basis, deny them.

29.      Defendants admit that for an unknown period of time: (a) Perfect Parallel made "Course Forge" software available as a free download to Perfect Golf users; (b) Course Forge allowed users to design virtual golf courses that could be played in Perfect Golf; and (c) third parties, including Online Golf Tour and Simulator Golf Tour, provided APIs that communicated with Perfect Golf to facilitate online tournament play.  Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 29 of the complaint and, on that basis, deny them.

30.      Defendants lack knowledge or information sufficient to form a belief about the truth of any and all remaining allegations in Paragraph 30 of the complaint and, on that basis, deny them.

31.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 of the complaint and, on that basis, deny them.

32.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the complaint and, on that basis, deny them.

**GSPro**

33.     Defendants admit that GSP develops golf simulator software ("GSPro"). Defendants deny the remaining allegations in Paragraph 33 of the complaint.

34.     Denied.

35.     Defendants admit that they released a commercial version of the GSPro on October 1, 2021.  Defendants deny the remaining allegations in Paragraph 35 of the complaint.

36.     Defendants admit that the text quoted in Paragraph 36 of the complaint appears on GSP's website, refer to the website for a true and correct recitation of its contents, and otherwise deny the allegations in Paragraph 36.

37.     Defendants deny the allegations in the first two sentences of Paragraph 37 of the complaint.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of Paragraph 37 of the complaint and, on that basis, deny them.

38.     Denied.

**Defendants' Unlawful Conduct**

39.     Denied.

40.     Denied.

41.     Denied.

42.     Defendants refer to the Perfect Parallel EULA for a true and correct recitation of its contents, and otherwise denies the allegations in Paragraph 42 of the complaint.

43.     Defendants refer to the Perfect Parallel EULA for a true and correct recitation of its contents, and otherwise denies the allegations in Paragraph 43 of the complaint.

44.     Defendants refer to the Perfect Parallel EULA for a true and correct recitation of its contents, and otherwise denies the allegations in Paragraph 44 of the complaint.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

## FIRST CAUSE OF ACTION

### (Direct Copyright Infringement – GSP and Davor Bogavac)

49.     Defendants repeat and reallege their responses to paragraphs 1 through 48 of the complaint.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 of the complaint and, on that basis, deny them.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

## SECOND CAUSE OF ACTION

### (Indirect Copyright Infringement – Davor Bogavac)

58.     Defendants repeat and reallege their responses to paragraphs 1 through 57 of the complaint.

59.     Denied.

60.     Denied.

61.     Denied.

## THIRD CAUSE OF ACTION

### (Breach of Contract – GSP and Davor Bogavac)

62.     Defendants repeat and reallege their responses to paragraphs 1 through 61 of the complaint.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

## PRAYER FOR RELIEF

Defendants deny that TrackMan is entitled to any of the relief sought in its Prayer for Relief.

## JURY TRIAL DEMAND

This paragraph contains no allegations and therefore no response is required.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof it might not otherwise bear, Defendants assert the following defenses.  Defendants reserve the right to allege additional facts and/or defenses, including affirmative defenses, which may be supported  by later investigation or discovery:

### FIRST DEFENSE

The complaint fails to state a claim on which relief can be granted.

### SECOND DEFENSE

TrackMan's claims are barred, in whole or in part, by the doctrine of laches.

### THIRD DEFENSE

TrackMan's claims are barred, in whole or in part, by the doctrine of estoppel.

### FOURTH DEFENSE

TrackMan's claims are barred, in whole or in part, because of TrackMan's ratification, agreement, acquiescence, or consent to Defendants' conduct.

### FIFTH DEFENSE

TrackMan's claims are barred, in whole or in part, by the doctrine of waiver.

### SIXTH DEFENSE

TrackMan cannot establish that it has suffered any damages as a result of the conduct alleged in the Complaint.

### SEVENTH DEFENSE

TrackMan's claims are barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH DEFENSE

TrackMan's claims are barred, in whole or in part, because Defendants' alleged use of the Perfect Golf, Virtual Golf and/or Virtual Golf 2 do not constitute copyright infringement.

## NINTH DEFENSE

TrackMan's claims are barred, in whole or in part, because Defendants' alleged breach of the Perfect Parallel End User License Agreement was justified and/or excused.

## TENTH DEFENSE

TrackMan's state law claims are preempted, in whole or in part, by the Copyright Act.

## ELEVENTH DEFENSE

TrackMan's alleged injury or damage, if any, would be adequately compensated by damages, and TrackMan therefore has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## TWELFTH DEFENSE

TrackMan is not entitled to an award of attorneys' fees or costs, punitive and/or special damages.

## THIRTEENTH DEFENSE

TrackMan's claim for copyright infringement is barred by the doctrine of copyright misuse.

## FOURTEENTH DEFENSE

TrackMan's claim for copyright infringement is barred by the doctrine of fair use.

## FOURTEENTH DEFENSE

TrackMan's claim for copyright infringement is barred by the *de minimis* doctrine.

# COUNTERCLAIM

1. TrackMan, Inc. ("TrackMan") initiated this litigation with a singular objective: to stifle the growth of GSPro Golf AB ("GSP"), a nascent contender in the highly-competitive arena of virtual golf simulation. All of TrackMan's claims are demonstrably false. More than two years ago, GSP confirmed to TrackMan that its golf simulation software ("GSPro") was built from the ground up by a community-driven team of veteran simulator golfers, not from the use of any of TrackMan's source code or other intellectual property. GSP did not hear from TrackMan again until it filed this lawsuit. This begs the question: Why did TrackMan decide to sue GSP now, despite the absence of a credible claim and knowing about GSP for years?

2. The answer is that TrackMan sued GSP not to seek redress for non-existent intellectual property theft, but to obstruct TrackMan's competition. TrackMan feels threatened by the potent combination of GSP's open and interoperable software, strategic alliances with TrackMan's competitors, and vibrant user community—all of which attract virtual golfers to play at home with competing launch monitors and imperil TrackMan's play-in-store business model.

3. Unlike TrackMan's golf simulation software (Virtual Golf 2), which works only with TrackMan's launch monitors, GSPro is compatible with a variety and growing list of third-party launch monitors.[1] It is no coincidence that TrackMan filed this lawsuit, without warning, the ***same day*** that GSP announced a partnership with Foresight Sports, TrackMan's main competitor. If the timing of the lawsuit were not enough to reveal TrackMan's monopolistic motives, GSP discovered that, three days after suing GSP, TrackMan sent a letter to Foresight

---

[1] A launch monitor is an electronic device that tracks and displays data related to a golf swing and a golf shot's trajectory.

notifying it of the lawsuit and demanding that Foresight abandon its planned integration with GSPro. This is patently anti-competitive behavior and an abuse of the legal process.

4.     TrackMan is also threatened by the increasing number of people installing golf simulators in their homes. TrackMan derives most of its revenue from selling its costly equipment and software to commercial pay-to-play facilities. By offering software that is compatible with more affordable, in-home launch monitors, GSP is driving consumers away from commercial venues, thereby suppressing demand for TrackMan's products. TrackMan wants to stop this movement and push consumers back into commercial shops.

5.     Additionally, the GSPro software is superior to TrackMan's Virtual Golf 2, and offers something unique that TrackMan does not: the support, camaraderie, and creativity of a vibrant community of thousands of virtual golf enthusiasts. Virtual Golf 2 software only allows users to play a limited number of TrackMan-approved golf courses, whereas GSPro allows users to play an ever-expanding list of hundreds of user-generated courses ("OPCD Courses"). The OPCD Courses are designed by simulation golf enthusiasts using a community-developed methodology called Open Platform Course Design ("OPCD") and hosted by a community-supported, third-party service, Simulator Golf Tour ("SGT"). SGT also facilitates tournament play, teams, and rankings, and moderates an active online forum for GSPro users.

6.     GSPro's interoperability, functionality, feature set, and pricing surpass TrackMan's software to such an extent that many owners of TrackMan launch monitors, both commercial and individual, have increasingly expressed a desire to connect their TrackMan launch monitors to GSPro. TrackMan's software is considerably more expensive, costing approximately *four times* as much as GSPro. It comes as no surprise, then, that TrackMan's customers are interested in switching to GSPro. In response, GSP has consistently maintained

that GSPro is not compatible with TrackMan's hardware, and suggested they contact Trackman to request GSPro support. By eliminating GSPro from the market, TrackMan hopes to quell these demands, allowing Trackman to maintain its grip on exorbitant annual software fees.

7. The bitter irony is that it was TrackMan's own short-sighted behavior that galvanized the virtual golfing community to create GSPro, SGT, and OPCD in the first place, which TrackMan now seeks to shut down through this meritless action. Many members of the GSPro community used to play Jack Nicklaus Perfect Golf ("JNPG"), a golf simulator developed by Perfect Parallel Inc. ("PP"). JNPG was compatible with multiple launch monitors, loaded user-generated courses ("CF Courses") created with PP's course design tool, Course Forge ("CF"), and offered tournament play through a third party, Online Golf Tour ("OGT"). TrackMan concluded that JNPG's compatibility with non-TrackMan launch monitors and golf-from-home model was bad for TrackMan's business. So TrackMan acquired PP and disabled JNPG's connectivity with third-party launch monitors—effectively taking it off the market. The JNPG community, which collectively had invested millions of dollars on launch monitors to play JNPG at home, had designed hundreds of virtual golf courses for the benefit of the community, and had developed a robust system to run tournaments, teams, and rankings—was left stranded by TrackMan's execution of its monopolistic business strategy.

8. But TrackMan underestimated the strength, talent and passion of the community. Individuals from around the world stepped up to fill the gaping void left by TrackMan's rug pull. Through the combined efforts of GSP, SGT, and OPCD, and collaborations with launch monitor companies, thousands of people now are able to play GSPro using multiple third-party launch monitors, to enjoy hundreds of OPCD Courses designed without the use of CF, and to compete with players from around the world—all from the comfort of their own homes.

9. Contrary to TrackMan's claims, neither GSP nor its founder, Davor Bogavac, violated any of TrackMan's contractual or intellectual property rights in developing GSPro. The GSPro software does not use any of TrackMan's intellectual property. Indeed, without having any legal obligation to do so, GSP incorporated into GSPro code that affirmatively **blocks** users from loading CF Courses. Although GSPro and JNPG share some similar features, the same can be said of almost any golf simulation software, and TrackMan does not and cannot claim a copyright in these non-protectable ideas.

10. TrackMan's use of PP's End User License Agreement ("<u>PP EULA</u>") and copyright law to try to block GSP from developing software that competes and/or interoperates with TrackMan's products constitutes quintessential copyright misuse. TrackMan is abusing copyright in an attempt to secure a patent-like monopoly over unpatented virtual golf simulators, course design tools, courses, and tournament play. Far from infringing anyone's copyright, GSP helps to fulfill copyright's constitutional mandate by encouraging the creation of virtual golf courses and the development of compatible technology. GSP also serves consumers by offering an affordable and accessible way to play virtual golf from home.

11. Despite being confronted with these facts, TrackMan has refused to withdraw its baseless lawsuit. To protect their business and future prospects, GSP and Bogavac seek a declaration that they did not violate any of TrackMan's contractual or intellectual rights.

## THE PARTIES

12. GSP is a Swedish corporation with an address at Älgvägen 16, 428 34 Kållered, Sweden.

13. Davor Bogavac is an individual residing in Sweden. Bogavac is the founder, owner and Chief Executive Officer of GSP.

14. TrackMan is a Delaware Corporation with its headquarters and principal place of business at 16445 North 91st Street, Suite 104, Scottsdale, Arizona, 85260.

**JURISDICTION**

15. This Court has subject matter jurisdiction over this Counterclaim under 28 U.S.C. § 1367(a).

16. This Court has personal jurisdiction over Counterclaim Defendants because they commenced this action.

**FACTS**

**A.**     **Jack Nicklaus Perfect Golf (JNPG)**

17. PP released its golf simulation software, JNPG, on or about May 3, 2016. Although PP did not make all features immediately available, JNPG included the following features relevant to TrackMan's allegations: (a) Course Forge (CF); (b) OGT; and (c) launch monitor sim connectors.

        **i.**     **Course Forge (CF)**

18. In or about October 2016, PP released the CF software as a free download available to users of JNPG. PP described CF as its "course design plugin for the Unity 5.2.3 editor" that allowed users to "create [their] own playable courses for Jack Nicklaus Perfect Golf which [they could] . . . share with anyone who plays the game." A CF Course was not packaged in a proprietary format, but as a so-called "Unity Asset Bundle," which is a standard feature of the Unity game editor and used in many video games.

19. With respect to "User-Generated Content," which includes CF Courses, the PP EULA provides:

> <u>User-Generated Content.</u> Some, but not all, of the Software is intended to be used in conjunction with Third Party Services (as defined below) to generate certain

14

output, including, but not limited to, heightmaps and overhead imagery (Terrain Forge), or virtual terrain and golf courses with enhanced features (Nicklaus Design Course Forge) (collectively, "User-Generated Content"). ***You may use, reproduce, publish, perform, display and distribute any User-Generated Content you create using the Software however you wish, but solely for personal use and not for Commercial Use as defined above***. You hereby grant Perfect Parallel and its affiliates the non-exclusive, irrevocable right to use, reproduce, modify, create derivative works from, distribute, transmit, broadcast, and otherwise communicate, and publicly display and publicly perform, your User Generated Content, and derivative works of your User Generated Content.

(emphasis added).

### ii.    Online Golf Tour (OGT)

20.    PP had a relationship with a third-party website and service called OGT, which organized, promoted, facilitated and recorded the result of multiplayer JNPG games and tournaments.  To provide that service, OGT provided an application programming interface ("API") that transmitted tournament and game state data to and from JNPG (the "OGT API").  Upon information and belief, OGT also hosted, organized and distributed more than 250 CF Courses that JNPG users designed using Course Forge.

### iii.    Launch Monitors for Simulation Play

21.    JNPG officially integrated with several launch monitors, which allowed users to play their CF Courses with real clubs and balls in the comfort of their own homes.  By purchasing a "sim pass" and downloading "sim connector" software from PP, users could connect JNPG to launch monitors offered by TrackMan's competitors.  JNPG users collectively invested millions of dollars to purchase JNPG-compatible launch monitors so that they could play JNPG with real clubs and balls.  Without sim connector functionality, users could play JNPG with only their PCs.

B.     **Trackman Acquires JNPG and Disables Third-Party Launch Monitors**

22.     JNPG's compatibility with non-TrackMan launch monitors and golf-from-home model was a direct threat to TrackMan, which derives most of its revenue from selling its costly equipment and software to commercial pay-to-play facilities.  So, TrackMan decided to acquire PP, including JNPG, on or about January 1, 2018—with the intention of disabling JNPG's compatibility with its competitors' in-home launch monitors.  Approximately 18 months later, TrackMan officially announced that it would be disabling the sim passes that allowed JNPG to connect with third-party launch monitors (the "Shutdown Announcement").  Sim passes purchased by August 2019 would remain active for one year, through August 2020, after which the sim connectors would no longer operate.

23.     Thus, after August 2020, the JNPG community that had invested millions to purchase non-TrackMan launch monitors and hundreds of hours designing CF Courses would no longer be able to play JNPG except on their PCs.  The JNPG community, including Bogavac, felt shocked, confused, and outraged by TrackMan's Shutdown Announcement.

C.     **Bogavac Develops Software to Play His Own CF Course**

24.     Bogavac is a talented software developer with experience developing programs using a free but powerful game editor, Unity.  Days after the Shutdown Announcement, Bogavac, using the Unity 5 editor, began writing code from scratch in the C# programming language to develop software that would allow him to continue to load and simulate play of the one CF Course he had designed using his launch monitor.  The PP EULA expressly allowed him to do this—*i.e.,* to use his CF Course for personal and non-commercial purposes.

25. Following the Shutdown Announcement, Bogavac told members of the virtual golfing community that he was working on this software, which initially he called "VGPro." As his development progressed, he occasionally shared updates with the community.

26. Some members of the community asked Bogavac to share the software so that they too could continue simulation play of their CF Courses using their launch monitors. Everyone understood that the PP EULA permitted these activities since both Bogavac, as a hobbyist developer, and users, as players, were making only personal and non-commercial uses of their CF Courses. Bogavac did not charge fees or generate any money from sharing his software with the community.

27. By June 2020, Bogavac had shared the software with a small group of people for free, renamed the software to "GSPro," and began operating under that name.

**D.     Online Golf Tour (OGT) Shutters and Simulator Golf Tour (SGT) Emerges**

28. As noted, TrackMan's Shutdown Announcement upset many members of the JNPG community. One such member was the longtime owner and operator of OGT, who told members of the community that he planned to shut down the OGT website and service, including the OGT API that enabled JNPG tournament play.

29. Members of the JNPG community scrambled to find a replacement for OGT. In or about January 2020, volunteers (not Bogavac or GSP) began developing a website and service called Simulator Golf Tour. SGT aimed to support JNPG tournament play in the interim period between OGT's closure, which occurred on March 2, 2020, and TrackMan's termination of launch monitor connectivity in August 2020.

30. On information and belief, to enable JNPG tournament play, SGT, or supporting members of the community, developed and implemented an API service that was functionally

equivalent to the OGT API (the "<u>SGT API</u>").  Neither Bogavac nor GSP played any role in the development and implementation of the SGT API.

31.　　PP, on the other hand, ***absolutely*** was involved.  In order for JNPG to communicate with the SGT API, the JNPG software had to be updated, at minimum, to refer clients to the SGT API.  On information and belief, PP (by then owned by TrackMan) not only enabled, but ***implored*** SGT to provide the API service as an important benefit to JPNG users following OGT's closure.  On or about March 7, 2020, PP released a beta update for JNPG on gaming distribution platform Steam that included the call to the SGT API.

**E.　　Open Platform Course Design (OPCD) Emerges**

32.　　While Bogavac developed the GSPro software and SGT launched to replace OGT, other members of the JNPG community (again, not Bogavac or GSP) began developing a new methodology to design golf courses ***without using CF*** that would be compatible with any 3D rendering environment, including GSPro.

33.　　The result of these efforts would later be referred to as the Open Platform Course Designer.  OPCD is not itself a piece of software but a detailed technical process, documented in writing and in various YouTube videos, to design golf courses primarily through the use of open source tools, including Inkscape, Blender, and Unity.  OPCD Courses designed with Unity are packaged as standard Unity Asset Bundles.

**F.　　JNPG Disables Simulation Play and GSPro Releases a "Beta" Version**

34.　　On September 1, 2020, JNPG simulator passes stopped working, relegating JNPG to a PC-only game.

35.　　By this time, Bogavac had begun making an early beta version of GSPro available to members of the community who asked for it.  GSPro was free, compatible only with a limited

number of third-party, non-TrackMan launch monitors, and designed to allow users to load and play their user-designed golf courses.

36. GSPro eventually facilitated tournament play by incorporating custom-designed, client-side API calling code that communicated with the SGT API. None of that code came from JNPG, TrackMan or PP.

### G. Bogavac Confirms to TrackMan that GSPro Does Not Infringe

37. TrackMan learned of the GSPro beta version, and realized that its strategy of shutting down the "golf from home" community had backfired. TrackMan had underestimated the community's coding skills and passion for in-home simulation play. TrackMan hired lawyers to try and shut GSPro down.

38. On February 26, 2021, TrackMan's outside counsel sent Bogavac a cease and desist letter asserting that GSPro incorporated "computer code" from JNPG and CF. However, the only allegedly infringing "code" identified by TrackMan was a lone reference to an unused CF library that had inadvertently been bundled with the GSPro software. Bogavac informed TrackMan that this reference had been removed, and confirmed that GSPro did not contain *any* code from JNPG or CF. So that TrackMan could confirm this representation, Bogavac invited TrackMan to review the GSPro codebase. TrackMan rejected the offer as its goal was to shut down GSPro, not learn the truth.

39. Instead, TrackMan demanded that Bogavac take steps to block users from loading their CF Courses into GSPro. Bogavac was under no legal obligation to do so, including because the PP EULA expressly authorizes JNPG users to use their CF Courses for personal and noncommercial purposes. Nevertheless, by the end of May 2021, GSPro had been updated to include code that proactively blocked CF Courses.

40.     In addition, also by the end of May 2021, Bogavac had permanently rendered CF and CF Courses obsolete for GSPro users by developing (again from scratch) and releasing a tool called GreenKeeper.  GreenKeeper allows designers to mark the positions of tees, pins, hazards and other objects of their OPCD Courses, and to output those positions as metadata with a ".gdk" file extension ("GK Metadata").  GSPro added functionality to load OPCD Courses using GK Metadata instead of CF metadata.

41.     After the release of GreenKeeper, Bogavac publicly announced: "***Any course not designed specifically for GSPro is no longer supported and will not function within GSPro***."

42.     While a few members of the JNPG community expressed disappointment by the loss of CF Courses, GSPro's staff explained that they "reluctantly abandoned all that great work that was built in the spirit of open collaboration" to "paint[] a clear picture for our future," which was possible since "[w]e now have tools and processes in place [i.e., OPCD and GreenKeeper] that allow for course options and features that were simply not possible before."

43.     Bogavac explained these important developments to TrackMan in a May 11, 2021 letter, which TrackMan conspicuously failed to mention in its complaint.  *See* Compl. ¶ 48.  The letter ended by stating:  "We hope this satisfied your clients concerns.  If it does not, let us know in a timely manner so we can discuss and determine a solution as soon as possible.  We are determined to solve this problem, but absence of communication for eight weeks is hindering the process."  TrackMan did not respond to this letter, suggesting that TrackMan was satisfied with Bogavac's response and GSP's compliance.

**H.     GSP Commercially Releases GSPro**

44.     On October 1, 2021, GSP released a commercial version of GSPro.  Prior to this date, neither Bogavac nor GSP had received any money for GSPro.

45. As discussed, at the time of its commercial release, GSPro contained no JNPG or CF code and was not compatible with or able to load CF Courses. Instead, GSPro could load only OPCD Courses using GK Metadata. Per OPCD, "***A truly OPCD course would be built in effect with never having had the Course Forge package ever touch it.***"

**I.**     **GSP Partners with TrackMan's Competitors**

46. Unlike TrackMan's golf simulation software, which works only with TrackMan's launch monitors, GSPro is compatible with a variety and growing list of third-party launch monitors.

47. Following the commercial release of GSPro, GSP entered into partnerships with major launch monitor vendors that compete with TrackMan, including Foresight Sports.

48. Foresight Sports is a global, industry-leading designer and manufacturer of performance analysis and game enhancement technologies including golf simulators and launch monitors. It is TrackMan's main competitor, and offers a more affordable product for in-home use.

49. On January 24, 2023, Foresight Sports publicly announced its partnership with GSPro ("Partnership Announcement"). In connection with the Partnership Announcement, Tim Briand, Director of Business Development at Foresight Sports, explained that "GSPro delivers an exciting option for users wishing to participate in a user-created golf simulation environment. With over 350 courses in the GSPro platform, and over 200 within our FSX platforms, our customers will soon have the widest variety of simulator courses available on any platform."

**J.**     **TrackMan Files this Lawsuit on the Day that the GSPro/Foresight Partnership is Announced**

50. It is no coincidence that TrackMan did nothing for more than two years after contacting GSP, then abruptly filed this lawsuit, without warning, the ***same day*** that GSP

announced its partnership with Foresight Sports. Three days later, TrackMan doubled-down on its anti-competitive behavior by sending a letter to Foresight Sports accusing GSP of "unauthorized use and infringement of the TrackMan software." TrackMan demanded that Foresight Sports not follow through with the "announced and planned integration with GSPro."

51. TrackMan also sought to disrupt other strategic alliances. Another launch monitor company, SkyTrak, announced in a Facebook group with approximately 21,000 members that, "due to the pending lawsuit Track[M]an has filed against GSPro and its owners," SkyTrak decided "to not move forward" with a planned integration and that its hardware "will not be compatible with GSPro."

52. TrackMan's motivation is transparent—it views GSPro and in-home simulation play as a threat and wants to put GSP out of business and push consumers back into the commercial golf venues that purchase TrackMan's costly equipment. However, TrackMan cannot misuse copyright to prevent competition and deprive a vibrant user community of superior and interoperable golf simulation software. The simulation golf community made its desires clear after TrackMan disabled JNPG's launch monitor connectivity—they wanted software that would allow them to play user-generated courses using their own launch monitors. Members of the community expended significant time and effort to develop software to support GSPro—including OPCD and SGT—to make this a reality. TrackMan's anti-competitive attempt to shut down what the community worked so hard to build must be stopped.

### FIRST CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement and Non-Breach of Contract
### (28 U.S.C. § 2201(a))

53. Counterclaim Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Counterclaim as if fully set forth herein.

54.     In light of TrackMan's claims, there is an actual controversy between the Counterclaim Plaintiffs and TrackMan as to whether Counterclaim Plaintiffs violated TrackMan's copyrights or breached the PP EULA.  Counterclaim Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201(a) that they did neither.

55.     TrackMan has alleged that Defendants/Counterclaim Plaintiffs "infringed the copyrights in Perfect Golf, Virtual Golf, and Virtual Golf 2, including Course Forge and the tournament API," and breached the PP EULA.

56.     Specifically, TrackMan has alleged that Defendants/Counterclaim Plaintiffs "copied and incorporated TrackMan's copyright-protected Course Forge code base directly into the GSPro Software" for "commercial purposes."  This is false.  The reference to the Course Forge library was removed from GSPro's code base long before the commercial release of the software.  Since the commercial release of GSPro, the software has not incorporated or used any Course Forge or other PP or TrackMan code.

57.     Trackman has further alleged that Defendants/Counterclaim Plaintiffs "downloaded, accessed, copied, and used" Perfect Golf, Virtual Golf and Virtual Golf 2's "copyright-protected API data structures … inside the GSPro Software" without permission and for commercial purposes.  This too is false.  Third-party SGT, not GSP, designed, owns, and operates the SGT API, including its data structures, that communicate with GSPro.  Moreover, these purely functional data structures are not copyrightable.  But even if they were, TrackMan cannot validly claim ownership of this information because, upon information and belief, the API data structures belong to OGT, not TrackMan.  Neither Bogavac nor GSP had access to the code that OGT used to implement its server-side API, or to the code included in JNPG that communicated with the OGT API.

58.     TrackMan has also alleged that Defendants/Counterclaim Plaintiffs copied or reverse-engineered, without permission, JNPG, Virtual Golf and Virtual Golf 2's "copyright-protected 'sim connector.'" However, this allegation also lacks a factual basis. To the extent that a "sim connector" refers to a software development kit ("SDK") designed and provided by a launch monitor company, neither Bogavac nor GSP ever had access to the SDKs used to connect TrackMan's launch monitors to golf simulation software. Nor have they ever developed or offered any software that would allow users to connect to TrackMan launch monitors.

59.     In addition, TrackMan claims that Defendants/Counterclaim Plaintiffs breached the PP EULA with respect to "Perfect Golf, Virtual Golf, and Virtual Golf 2, including Course Forge and the API data structures." This too is false. As an initial matter, the PP EULA, by its own terms, applies only to PP's software, including JNPG and CF—not to Virtual Golf or Virtual Golf 2. As detailed above, Defendants/Counterclaim Plaintiffs did not: make "commercial use" of JNPG, CF or any other TrackMan software; reproduce any JNPG or CF code into GSPro; replicate or reverse-engineer, JNPG's, CF's, or any other Trackman software's sim connector; adapt, modify, or create any derivative works based on JNPG, CF or any other TrackMan software; or assist any third parties with making unauthorized copies of JNPG, CF or any other TrackMan software. They also did not make any unauthorized or commercial use of any CF Courses.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Defendants/Counterclaim Plaintiffs respectfully request that this Court issue an order:

(i)     Dismissing Plaintiff's complaint with prejudice in its entirety;

(ii) Declaring that Defendants/Counterclaim Plaintiffs have neither infringed TrackMan's intellectual property nor breached the PP EULA;

(iii) Awarding Defendants/Counterclaim Plaintiffs its costs and attorneys' fees, including as permitted by the U.S. Copyright Act; and

(iv) Awarding Defendants/Counterclaim Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 7, 2023

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: ___/s/ Caren Decter_____
Caren Decter
Jeremy S. Goldman
28 Liberty Street, 35th Fl.
New York, NY 10005
Tel.: (212) 980-0120
Fax: (347) 438-2133
cdecter@fkks.com
jgoldman@fkks.com
*Attorneys for Defendants/Counterclaim Plaintiffs*