FIRESTONE GREENBERGER PLLC
*Attorneys for Defendants SimulatorGolfTour LLC and Chad Cooke*
Jordan Greenberger, Esq.
225 West 34th Street, 9th Floor
New York, NY 10122
(212) 597-2255
jg@firegreenlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACKMAN, INC., | Index No. 1:23-cv-598-NRB |
| Plaintiff, | |
| v. | **ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIM** |
| GSP GOLF AB d/b/a GSPRO, DAVOR BOGAVAC, SIMULATORGOLFTOUR LLC, and CHAD COOKE, | |
| Defendants. | |
| GSP GOLF AB d/b/a GSPRO and DAVOR BOGAVAC, | |
| Counterclaim Plaintiffs, | |
| v. | |
| TRACKMAN, INC., | |
| Counterclaim Defendant. | |

Defendants SimulatorGolfTour LLC ("LLC") and Chad Cooke ("Cooke"; with SGT, "Defendants"), for their answer and counterclaims to the First Amended Complaint ("Complaint") [Doc. 32] of plaintiff Trackman, Inc. ("Trackman" or "Plaintiff"), plead the following:

## **PARTIES**

1.      Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, except admit that Plaintiff offers hardware and software for tracking and simulating activities related to the sport of golf.

2.      Defendants admit the allegations in the first sentence of paragraph 2 of the Complaint but lack knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence.

3.      Defendants admit the allegations in the first sentence of paragraph 3 of the Complaint but lack knowledge and information sufficient to form a belief as to the truth of the allegations in the second and third sentences.

4.      Defendants admit that LLC is an Iowa limited liability company with an address at 2502 NW Maple Street, Ankeny, Iowa 50023 (and note that A*n*keny is mis-spelled in the Complaint as A*r*keny).  Defendants further admit that LCC provides a golf simulator platform, Simulator Golf Tour ("SGT"), at simulatorgolftour.com. Defendants deny the remaining allegations of Paragraph 4 of the Complaint.

5.      Defendants admit the allegations in paragraph 5 of the Complaint, except deny that Cooke was the sole developer of SGT and further note that A*n*keny is mis-spelled in the Complaint as A*r*keny.

## JURISDICTION AND VENUE

6.      The allegations in paragraph 6 of the Complaint are legal conclusions to which no response is required, but to the extent that a response is required Defendants agree that the court has subject matter jurisdiction over the copyright and Lanham Act claims.

7.      The allegations in paragraph 7 of the Complaint are legal conclusions to which no response is required.  To the extent that a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint, except expressly deny (i) the allegations in the second sentence, (ii) that the software

is "infringing," and (iii) that they have "committed tortious acts" within or without the State of New York or otherwise tortiously caused injury to Plaintiff.

8.      The allegations in paragraph 8 of the Complaint are legal conclusions to which no response is required, but to the extent that a response is required Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations, respectfully request the Court to any such purported agreement for its terms, and aver that the Court dismissed Plaintiff's breach of contract claim on the basis of pre-emption.

9.      Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

10.      The allegations in paragraph 10 of the Complaint are legal conclusions to which no response is required, but to the extent that a response is required Defendants deny the allegations.

11.      The allegations in paragraph 11 of the Complaint are legal conclusions to which no response is required, but to the extent that a response is required Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations, respectfully request the Court to any such purported agreement for its terms, and aver that the Court dismissed Plaintiff's breach of contract claim on the basis of pre-emption.

## ALLEGATIONS

12.      Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13.      Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint, except admit that TrackMan offers launch monitors and simulators.

14.     Defendants admit the allegations in paragraph 14 of the Complaint.

15.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.     Defendants admit the allegations in the first sentence of paragraph 17 of the Complaint but lack knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence.

18.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint, except admit that Trackman's simulators offer a golf experience away from a physical golf course.

20.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint, except admit that Trackman's simulator allows players to practice their golf game.

23.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

26.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.    Defendants admit the allegations in the first and second sentence of paragraph 29 of the Complaint and lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations.

30.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint.

31.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint.

32.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint.

33.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint.

34.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint, except admit that Course Forge allows users to design golf courses.

35.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 35 of the Complaint and admit the allegations in the second and third sentences in paragraph 35.

36.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Complaint.

37.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Complaint, except admit that "Virtual Golf" and "Virtual Golf 2" are golf simulation programs that have been released for use with launch monitors.

38.     Defendants admit the allegations in the first and second sentence of paragraph 38 of the Complaint except lack knowledge and information sufficient to form a belief as to the truth of whether "TrackMan A/S" had made the announcement, and Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38.

39.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint.

40.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint, except admit that there was an announcement in or around August 2019 that Perfect Golf simulator licenses would be discontinued the following year.

6

41.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint.

42.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint.

43.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint, except admit that OGT announced it would wind down its operations, that Cooke (and other volunteers) developed a new tournament platform called Simulator Golf Tour ("SGT") to replace OGT to host Perfect Golf events through the date that Trackman was to shut off third-party Perfect Golf connections, that the SGT team worked with Trackman to coordinate those event between March and August 2022, and that subsequently SGT operated with GSPro.

44.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint, except admit that there are lots of courses for GSPro users to play on SGT.

45.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint to the extent that they concern the GSPro Defendants.  To the extent that the allegations concern Cooke and LLC, Defendants deny the allegations in paragraph 45 of the Complaint, except admit that Cooke and other volunteers developed SGT and that SGT uses some field and functions names that are similar to the Perfect Golf client-side API.

46.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Complaint.

7

47.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Complaint.

48.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Complaint.

49.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint.

50.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint.

51.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint.

52.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint.

53.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint.

54.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint, except admit that GSPro was initially released in 2020 and that updated versions of GSPro have been released.

55.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint.

56.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint, except admit that GSPro can be played with a number of launch monitors that compete with Trackman's launch monitors.

57.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the Complaint.

58.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint.

59.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint.

60.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Complaint, except admit that SGT replaced OGT as a simulator golf tournament platform and that Mr. Cooke was the lead developer of the SGT website and database.

61.     Defendants deny the allegations in paragraph 61 of the Complaint, except admit that SGT became a commercial enterprise in or around November 2020 and required membership starting in or around January 2021.

62.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint, except admit that GSPro is interoperable with SGT and admit that Mr. Evans made the quoted communication.

63.     Defendants admit the allegations in the first two sentence of paragraph 63 of the Complaint, and lack knowledge and information sufficient to form a belief as to the truth of the allegations in the third sentence.

64.     Defendants deny the allegations in paragraph 64 of the Complaint, except admit that SGT's software incorporates certain elements of the API naming convention that Trackman provided to it in or around March 2020.  Defendants further aver that the SGT website, database and server side API were all built from scratch, that the only aspects that were needed from

Trackman/Perfect Golf was the field and function names that are part of the outgoing data stream (a/k/a the client side API formatting), and that such filed and function names incorporate terminology common in the game of golf and terminology believed to be used by other golf tournament websites and software.

65.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint, except admit that SGT's software incorporates certain elements of the API naming convention that Trackman provided to it in or around March 2020 (and therefore expressly deny that Defendants were no granted permission to use such API elements) and admit that SGT provides online competitions for GSPro users.

66.     Defendants deny the allegations in paragraph 66 of the Complaint.

67.     Defendants admit the allegations in paragraph 67 of the Complaint, except deny that the communications were on behalf of Cooke personally, and lack knowledge and information sufficient to form a belief as to the truth of the allegations in sub-paragraphs "b." through "j." and respectfully refer the Court to the communications referenced therein for their meaning.

68.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint.

69.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 69 of the Complaint.

70.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Complaint.

71.     Defendants deny the allegations in the first sentence of paragraph 71 of the Complaint and admit the allegations in the remaining sentences to the extent that they concern

these answering Defendants (and lack knowledge and information sufficient to form a belief as to the truth of the allegations to the extent that they concern the GSPro defendants).

72.     Defendants deny the allegations in the first, third and fourth sentences of paragraph 72 of the Complaint (except lack knowledge and information sufficient to form a belief as to the last clause of the fourth sentence), and Defendants lack knowledge and information sufficient to form a belief as to the second sentence.

73.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the Complaint.

74.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 74 of the Complaint and deny the remaining allegations.

75.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 75 of the Complaint.

76.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 76 of the Complaint.

77.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the Complaint.

78.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 78 of the Complaint.

79.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the Complaint.

80.     Defendants deny the allegations in paragraph 80 of the Complaint, except lack knowledge and information sufficient to form a belief as to the truth of the allegations to the extent that they concern the GSPro Defendants.

81.     Defendants deny the allegations in paragraph 81 of the Complaint, except lack knowledge and information sufficient to form a belief as to the truth of the allegations to the extent that they concern the GSPro Defendants.

82.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 82 of the Complaint.

83.     Defendants deny the allegations in paragraph 83 of the Complaint, except admit that Mr. Cooke is the managing member of LLC.

84.     Defendants deny the allegations in the first sentence of paragraph 84 of the Complaint, except lack knowledge and information sufficient to form a belief as to the truth of the allegations in that sentence to the extent that they concern the GSPro Defendants, and Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 84 and respectfully refers the Court to the EULA for its terms.  Defendants further note that the breach of contract claim was dismissed.

85.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 85 of the Complaint, and note that the breach of contract claim was dismissed.

86.     Defendants deny the allegations in the first sentence of paragraph 86 of the Complaint.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 86, except deny that the subject statements were false and/or misleading and Defendant admit that the courses were removed after receiving the letters.

87.    Defendants deny the allegations in paragraph 87 of the Complaint.

88.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint.

## FIRST CAUSE OF ACTION

### (Direct Copyright Infringement – All Defendants)

89.    Defendants repeat and re-allege their responses to paragraph 1-88 of the Complaint.

90.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint, except deny that the API naming convention at issue is copyrightable or otherwise subject to copyright protection.

91.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 91 of the Complaint, except deny that the API naming convention at issue is copyrightable or otherwise subject to copyright protection.

92.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 92 of the Complaint, except deny that the API naming convention at issue is copyrightable or otherwise subject to copyright protection.

93.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 93 of the Complaint, except deny that the API naming convention at issue is copyrightable or otherwise subject to copyright protection and admit that SGT's software incorporates certain elements of the API naming convention that Trackman provided to it in or around March 2020.

94.    Defendants deny the allegations in paragraph 94 of the Complaint, except lack knowledge and information sufficient to form a belief as to the truth of the allegations to the

extent that they concern the GSPro Defendants and note that the breach of contract claim was dismissed.

95.    Defendants deny the allegations in paragraph 95 of the Complaint, except lack knowledge and information sufficient to form a belief as to the truth of the allegations to the extent that they concern the GSPro Defendants.

96.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 96 of the Complaint.

97.    Defendants deny the allegations in paragraph 97 of the Complaint, except admit that Mr. Cooke is the founder and managing member of LLC.

## SECOND CAUSE OF ACTION

### (Indirect Copyright Infringement – Davor Bogavac)

98.    Defendants repeat and re-allege their responses to paragraph 1-97 of the Complaint.

99.    The allegations concern Davor Bogavac, not the herein answering Defendants. But to the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint.

100.    The allegations concern Davor Bogavac, not the herein answering Defendants. But to the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 100 of the Complaint to the extent that they concern the GSPro Defendants, and Defendants deny the allegations to the extent that they concern Defendants.

101.    The allegations concern Davor Bogavac, not the herein answering Defendants. But to the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 101 of the Complaint.

102.    The allegations concern Davor Bogavac, not the herein answering Defendants. But to the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 102 of the Complaint to the extent that they concern the GSPro Defendants, and Defendants deny the allegations to the extent that they concern Defendants except admit that GSPro and SGT share elements of an API naming convention.

## THIRD CAUSE OF ACTION

### (Indirect Copyright Infringement – Chad Cooke)

103.    Defendants repeat and re-allege their responses to paragraph 1-102 of the Complaint.

104.    Defendants deny the allegations in paragraph 104 of the Complaint.

105.    Defendants deny the allegations in paragraph 105 of the Complaint, except admit that SGT is able to operate with GSPro.

106.    Defendants deny the allegations in paragraph 106 of the Complaint, except admit that Mr. Cooke is the founding and managing member of LLC and has received income from the business.

107.    Defendants deny the allegations in paragraph 107 of the Complaint, except admit that Mr. Cooke is the founding and managing member of LLC, that he has received income from the business, and that SGT is able to operate with GSPro.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – All Defendants)

108.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 108 of the Complaint.  To the extent a response is required, Defendants repeat and reallege their responses to paragraphs 1-107 of the Complaint.

109.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 109 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

110.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 110 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

111.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 111 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

112.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 112 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

113.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 113 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

114.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 114 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

115.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 115 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

116.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 116 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

117.    The breach of contract claim was dismissed by the Court in the Memorandum And Order entered September 24, 2024 [Doc. 62], and accordingly no response is required to paragraph 117 of the Complaint.  To the extent a response is required, Defendants deny the allegations.

## FIFTH CAUSE OF ACTION

### (False Advertising – LLC and Cooke)

118.    Defendants repeat and reallege their responses to paragraph 1-117 of the Complaint.

119.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 119 of the Complaint.

120.    Defendants deny the allegations in paragraph 120 of the Complaint.

121.    Defendants deny the allegations in the first sentence of paragraph 121 of the Complaint, except admit that they did not have a license directly from the trademark owners for the subject courses and admit the allegations in the second and third sentence of paragraph 121 to the extent that they concern these answering Defendants.

122.    Defendants deny the allegations in paragraph 122 of the Complaint, except lack knowledge and information sufficient to form a belief as to the allegation concerning what users relied upon.

123.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 of the Complaint.

124.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 of the Complaint, and respectfully refer the Court to the referenced communications.

125.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 of the Complaint, except deny that they made false and/or misleading statements or otherwise engaged in wrongful conduct.

126.    Defendants deny the allegations in paragraph 126 of the Complaint.

## AFFIRMATIVE DEFENSES

1.      Plaintiff fails to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred because one or more of the alleged works copied in part in SGT, including without limitation the subject API elements and naming convention, are not copyrightable.  The alleged works lack sufficient originality and are a non-copyrightable process or method.

3.      The claims are barred by the doctrine of the idea-expression dichotomy.

4.      Plaintiff's claims are barred by the statute of limitations.

5.      Plaintiff's claims are barred by the doctrine of laches.

6.      Plaintiff's claims are barred by the doctrine of estoppel.

7.      Plaintiff's claims are barred by the doctrine of waiver.

8.      Plaintiff's claims are barred by the doctrines of ratification, agreement, acquiescence and/or consent.

9.      Plaintiff's claims are barred by the doctrine of license.

10.      Plaintiff's claims are barred by the fair use doctrine (copyright and trademark).

11.      Plaintiff's claims are barred by the First Amendment and principles of free speech.

12.      Defendants' infringement, if any, was de minimis.

13.      Plaintiff lacks standing.

14.      Plaintiff was not the author of the work(s) allegedly infringed.  The copyright registration for Perfect Golf (Registration Number / Date: TX0009168826 / 2022-09-14) identifies "Pre-existing Material: Pre-existing code licensed from third-parties."  On information

and belief, the subject API naming convention was developed in whole or in part by one or more

third-parties (e.g., OGT and/or its owner, Rick).

15.     Plaintiff's alleged parent, Denmark based TrackMan A/S, is a necessary but

unnamed party to this case and Plaintiff has not pleaded why TrackMan A/S has not been joined

to this case.

16.     Defendant's alleged infringement, if any, was innocent.

17.     Plaintiff's claims are barred by the doctrine of unclean hands.

18.     Plaintiff is ineligible for enhanced remedies under 17 U.S.C. § 412.

19.     Plaintiff's claims are barred by the doctrine of pre-emption.

20.     Plaintiff's claims are barred because the allegedly false statements were not false.

21.     There has been no likelihood of confusion.

22.     SGT has appropriate and sufficient disclaimers concerning courses available for

play.

23.     Plaintiff's allegations are not sufficiently specific and are impermissibly vague

and conclusory.

24.     The court lacks personal jurisdiction over Defendants.

25.     Venue in the Southern District of New York is improper.

26.     Plaintiff's claims are barred by the doctrine of copyright misuse.

27.     Defendants' alleged acts have not proximately caused damages to Plaintiff.


PLEASE TAKE NOTICE that Defendants reserve the right to allege additional facts

and/or defenses, including affirmative defenses.  Please take further notice that any of Plaintiff's

allegations not specifically responded to herein are denied.

## COUNTERCLAIM

Defendants, without waiver of or prejudice to any of their affirmative defenses (including without limitation their jurisdiction and venue-based defenses), plead the following for their declaratory judgment counterclaim against Trackman:

### PARTIES

1.     Cooke is an Iowa resident, and the managing member of LLC.

2.     LLC is an Iowa limited liability company.

3.     On information and belief, Trackman is a Delaware corporation with its principal place of business in Arizona.

### JURISDICTION & VENUE

4.     Defendants seek a declaratory judgment involving an actual controversy under the Copyright Act of 1976.  The basis of jurisdiction is 28 U.S.C. §§§ 1331, 1338(a), and 2201.

5.     Jurisdiction over Trackman in this venue is proper because Trackman commenced this action in this venue.

### COUNT I (Declaratory Judgment)

6.     On information and belief, between approximately 2015 and 2019 a community of golf simulation enthusiasts were using the Perfect Golf golf simulation software ("Perfect Golf").

7.     On information and belief, during that same time Perfect Golf worked with a tournament website called Online Golf Tour (or, "OGT").

8.     On information and belief, OGT was managed by a man named Rick.

9.      On information and belief, Rick had collaborated with Perfect Golf's prior owner (Perfect Parallel) to create an application programming interface ("API") that would allow OGT and the Perfect Golf program to communicate and work with each other.

10.     In or around the end of 2019, an announcement was made that Trackman would be shutting down service for online simulator tournament play in or about August 2020.

11.     As a result, on information and belief, Rick no longer wanted to manage OGT and he essentially shut-down OGT.

12.     Cooke is a golf simulator enthusiast and had played in various OGT tournaments.

13.     On information and belief, there were also hundreds of other enthusiastic members of the golf simulation who would soon be losing the ability to play their beloved golf simulation tournaments.

14.     Accordingly, Cooke decided to build a tournament website to replace OGT, and he called it simulatorgolftour.com (or "SGT").

15.     The SGT website, database and server-side API were all built from scratch.

16.     SGT was a community effort built to allow the old Perfect Golf community to still play simulated golf and compete against each other.

17.     There were many volunteers who helped get SGT up and running.

18.     Cooke was the lead developer of the SGT website and database.

19.     Brian Evans (on information and belief, currently employed by GSPro) helped create the server-side API, along with Tim McNaughton, who was the main developer of the SGT server-side API and who Cooke only knew through Discord.

20.     Vance Vongphakdy (a/k/a Zmax on Discord) was another volunteer who had been the day-to-day manager of OGT and who communicated with Trackman regarding the launch of SGT.

21.     In order for the new tournament site to work with Perfect Golf and therefore serve as a replacement for OGT, SGT's API needed to communicate and share data with Perfect Golf.

22.     Cooke and other volunteer golf enthusiasts teamed up and collaborated with Trackman to enable the SGT API to communicate and share data with Perfect Golf.

23.     The API for SGT contains various functions and data fields.

24.     A function's primary purpose is to implement specific logic or calculations within SGT.

25.     For example, one function may be to provide statistics concerning a given tournament, such as calculating which player hit the longest drive.

26.     Within each function are data fields, which contain variable information, that are used to make the calculation or implement the logic.

27.     A function's performance is based upon various data fields.

28.     Using the example of a longest-drive function, the function would rely upon data fields like the distance each player hit each drive for each hole.

29.     Another example of a data field would be the speed of the ball after it is hit by a player.

30.     The logic within the functions was written from scratch within the SGT server side of the API.

31.    The API handled several function calls, whereby SGT, as the server, would request (or call) data from Perfect Golf, as the client, or whereby Perfect Golf would request (or call) data from SGT.

32.    Each of those function calls had a specific name that the server-side (SGT) and the client-side (Perfect Golf) both had to use to properly communicate with each other.

33.    Like the function calls, the data field names also need to match between the server-side and the client-side in order to properly communicate with each other.

34.    For example, if the client uses the data field name "speed_of_ball" within their software but the server's API uses the name "ballSpeed" then the two sides will not properly share data concerning the speed of the ball.  Instead, both the client and the server would need to use "ballSpeed" (or "speed_of_ball") to properly share the data.

35.    The shared naming convention is a system by which data is effectively shared between the client and server.

36.    The creators of SGT's API had a choice on how to name each function and data field.

37.    However, the names needed to match between the client-side and the server-side in order to properly share information.

38.    Additionally, the names did not need to be particularly special or unique.

39.    The selected names incorporate terminology that is common in the sport of golf, and they generally reflect the factual nature of the information (e.g., the data field for a player's score on the 18th hole might be named something like "hole18_score"; or for the speed of a ball, "ballSpeed").

40.     On information and belief, other golf simulation software programs that integrate with tournament websites uses the same or nearly identical field and function names.

41.     Trackman did not express an interest in redoing their client-side naming convention, which was already built and complete based on the prior collaboration with OGT.

42.     Accordingly, Cooke and his team decided to adopt Perfect Golf's existing naming convention so that their newly built API for SGT could communicate and seamlessly work with Perfect Golf (i.e., properly share data between the client and server).

43.     On information and belief, Trackman's references throughout the First Amended Complaint to "API data structures" means the naming convention that is used in SGT's API.

44.     The functions and their underlying data fields are the data structure.

45.     Trackman voluntarily and freely provided Cooke and/or members of his team with access to the names to give to the functions and data fields.

46.      Trackman voluntarily and freely provided Cooke and/or members of his team the tools necessary to incorporate that information into SGT's API.

47.     In or about March 2020, Cooke and/or members of his team received a list of function names from Rick (who had run OGT), including small descriptions of the various function names that OGT had used in its API with Perfect Golf.

48.     Cooke and/or members of his team received a file called perfectgolfapi.class.php, which was basically an overview document showing the SGT team what the function names were.  Annexed hereto as Exhibit 1 is a true and correct copy of that file.

49.     On information and belief, at around the same time Trackman sent Vance a file called api.php.

50.     The api.php file included Trackman's encryption/decryption code.

51.     The api.php file was a Base64 encoded file that once decoded was the code that had the encryption keys needed to be able to decrypt the data stream to-and-from Perfect Golf.

52.     Without the api.php file, there was no way for SGT to know what was on the Perfect Golf data stream.

53.     On information and belief, those files were sent to Cooke's colleague via a direct message ("DM") on the Discord messaging platform.

54.     On information and belief, Trackman voluntarily sent the api.php file.

55.     On information and belief, Trackman sent the api.php file without restriction.

56.     On information and belief, Trackman sent the api.php file for free.

57.     On information and belief, Trackman did not communicate any limitations, restrictions, or conditions, on using the naming convention.

58.     On information and belief, Trackman sent that information so that it could operate Perfect Parallel with SGT through August 2020.

59.     With the data streaming from Perfect Golf, and the ability to decrypt that data as a result of Trackman giving Cooke and/or members of his team the key to that information, Cooke and/or members of his team were then able to identify from the data stream the function names and related data field names that Perfect Golf was using with OGT and that SGT should therefore incorporate in SGT's API so that it would work with Perfect Golf.

60.     In providing Cooke and/or members of his team with that information Trackman did not provide them with any pre-existing databases.

61.     SGT started with blank data tables and then started populating those when Trackman connected with SGT.

62.    After being granted access to that information, Cooke and/or members of his team determined that Perfect Golf was using more function names and data field names than they would need for SGT's API.

63.    Accordingly, Cooke and/or members of his team incorporated only a selection of the provided function names to adopt into the API (a total of 5 function names), and then even within those function names they incorporated only a selection of the data field names to use.

64.    Perfect Golf had the ability to send and receive more information than was needed for SGT, and Cooke and/or members of his team adopted only those names that they needed.

65.    With that information, elements of the naming convention that Perfect Golf had been using with OGT was incorporated into the new API for SGT, and Cooke and his team had what was needed to have a successful API connection between Perfect Golf and SGT.

66.    Cooke and his team could not have done this without Trackman's knowledge.

67.    Cooke and his team could not have done this without Trackman's consent.

68.    Cooke and his team could not have done this without Trackman's participation.

69.    Nor would Cooke and his team had incorporated those elements of the naming convention if they knew that Trackman would turn around and sue them for it years later.

70.    Annexed hereto as Exhibit 2 is a true and correct copy of the 5 function names (highlighted in bold), with the related data field names used in processing each such function thereunder, that we incorporated into the API for SGT.

71.    The only thing SGT copied from Perfect Parallel was the naming convention described above.

72.    SGT did not copy any code, data or other works of original authorship from Perfect Parallel.

73.    All that was remaining in order for SGT to work with Perfect Golf was for Trackman to roll out an update to its users that would allow the users to start pointing data streams to the SGT server.

74.    On or about March 7, 2020, Trackman rolled out that update.

75.    Annexed hereto as <u>Exhibit 3</u> is a true and correct copy of an email chain with Trackman's head of Perfect Parallel, Andrew Jones, reflecting Trackman voluntarily rolling out the update.

76.    Vance, who had been emailing with Andrew Jones at Trackman, then posted confirmation on the Discord messaging platform that the update had been rolled out.  Below is a copy of that post:



77.    That same week, SGT ran the first Perfect Golf tournament for Trackman.

78.    SGT replaced OGT to host Perfect Golf events through the date that Trackman was to shut off third-party Perfect Golf Connections in August 2020.

79.    SGT worked with Andrew Jones of Trackman to coordinate those events, which started in March 2020 and ran through August 2020.

80.    SGT continued to run Perfect Golf tournaments in collaboration with Trackman until in or around August 2020, which is when Trackman ceased offering Perfect Golf.

81.    SGT did not charge anything at all while it was running events for Perfect Golf.

82.    SGT offered tournament play for free while it was running events for Perfect Golf.

83.     Cooke and his team offered SGT simply for the golf sim enthusiast community to have a place to play after OGT shut down.

84.     With Perfect Golf's end on the horizon, Cooke and his team collaborated with GSPro to get a tournament site ready for GSPro.

85.     SGT, as the "server," was already using an API built from the ground up on the server side in its collaboration with Perfect Golf, as the "client."

86.     Rather than re-invent the wheel, Cooke and his team began using the same API (including naming conventions) with GSPro that had been used with Perfect Golf.

87.     From the perspective of the SGT API, GSPro was simply a new "client".

88.     GSPro then lined up its naming convention with what the SGT server was already using so that there would be a working API process between SGT and GSPro.

89.     The first SGT- GSPro tournament took place on or about August 31, 2020.

90.     For a period of time, those GSPro- SGT tournaments were also offered to players for free.

91.     SGT ran free events on GSPro from approximately August 31, 2020, through January 2021.

92.     In or about January 2021, SGT started to require a paid membership.

93.     On information and belief, courses made available on GSPro were user generated.

94.     In truthfully communicating that the courses were available, Defendants did not reference licensing status at all.

95.     Disclaimers on SGT are sufficient to prevent customer confusion.

96.     The webpage www.simulatorgolftour.com/courses states in pertinent part: "All courses are free, user-generate courses with some being fantasy courses and other replicating real

courses.  The golf course simulations playable in GSPro are not endorsed by or affiliated with

any real-world golf courses or their respective owners or operators.  If a course contains a

trademarked item you own, please reach out to simgolftour@gmail.com and it will be removed

immediately."  Below is a screenshot (taken October 9, 2024):



97.     Further, on information and belief, it is widely known amongst relevant

consumers and the GSPro community that courses are free to build and are all user-created

courses.

98.     There is an actual case and controversy whether the information that Trackman

provided in order for SGT to replace OGT and that is incorporated in SGT's server-side API is

copyrightable.  Defendants seek a declaratory judgment that it is not copyrightable.

99.     There is an actual case and controversy whether Trackman's conduct –

coordinating with SGT to host events for Perfect Parallel by providing the API naming structure

without limitations, updating the game to point to SGT, and then having SGT host tournaments

between March and August 2020 – constitute one or more defenses to Plaintiff's claims.

Defendants seek a declaratory judgment that it does.

100.    There is an actual case and controversy whether Defendants engaged in false advertising.   Defendants seek a declaration that their communications were not false or misleading, and that there is no likelihood of confusion, including as a result of disclaimers made on SGT's website and information well-known amongst relevant consumers.

## PRAYER FOR RELIEF

WHEREFORE judgment should be entered in favor of Defendants, and against Plaintiff:

A.  Dismissing the Complaint with prejudice;

B.  Granting Defendants a judgment declaring that the subject API naming convention is not copyrightable, that SGT does not otherwise copy any protectible elements of software owned by Trackman, that Trackman's conduct constitutes one or more defenses to the infringement claims, and that Defendants did not engage in false advertising;

C.  Awarding Defendants their attorney's fees as the prevailing party (17 U.S.C. § 505; 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d));

D.  Awarding Defendants interest, and Defendants' other recoverable costs and disbursements; and

E.  Granting Defendants such other and further relief as the Court deems just.

PLEASE TAKE FURTHER NOTICE that if Defendants are not the prevailing party, but a judgment entered in favor of Plaintiff is less than any Fed. R. Civ. P. 68 offer of judgment made by Defendants, then judgment should be entered in favor of Defendants for their attorney's fees and costs incurred after the offer was made (Fed. R. Civ. P. 68(d)).

<u>NOTICE</u>: Defendants demand a trial by jury as to all claims to which they are entitled.

Dated: October 15, 2024

FIRESTONE GREENBERGER PLLC
*Attorneys for Defendants SimulatorGolfTour LLC and Chad Cooke*

___/s/ Jordan Greenberger_____
Jordan Greenberger, Esq.
225 West 34th Street, 9th Floor
New York, NY 10122
(212) 597-2255
jg@firegreenlaw.com