UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACKMAN, INC.,<br><br>                Plaintiff,<br><br>       v.<br><br>GSP GOLF AB d/b/a GSPRO, DAVOR BOGAVAC, SIMULATORGOLFTOUR LLC, and CHAD COOKE,<br><br>                Defendants. | Case No. 1:23-cv-598-NRB |
| GSP GOLF AB d/b/a GSPRO, DAVOR BOGAVAC, SIMULATORGOLFTOUR LLC, and CHAD COOKE,<br><br>           Counterclaim Plaintiffs,<br><br>       v.<br><br>TRACKMAN, INC.,<br><br>           Counterclaim Defendant. | |

## [PROPOSED] ORDER REGARDING ELECTRONIC DISCOVERY

WHEREAS, Plaintiff and Counterclaim Defendant TrackMan, Inc. ("TrackMan") and Defendants and Counterclaim Plaintiffs GSP Golf AB d/b/a GSPro and Davor Bogavac (collectively, the "GSP Defendants") and Defendants and Counterclaim Plaintiffs SimulatorGolfTour LLC and Chad Cooke (collectively, the "SGT Defendants") have conferred and agree on the terms of the following proposed Order Regarding Electronic Discovery for the preservation, collection, and production of electronically stored information and documents in this action;

1

WHEREAS, the Court has found that good cause exists to issue this Order Regarding Electronic Discovery (the "Order");

NOW, THEREFORE, it is hereby ordered that the following procedures and obligations will govern the preservation, collection, and production of electronically stored information and documents in this action.

1.    **General Obligations**

      a.    Except as specifically limited in this Order, the collection and production of Electronically Stored Information ("ESI") in this litigation will be governed by this Order.

      b.    The Parties will cooperate and use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant ESI, including in complying with the procedures set forth in this Order.  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

      c.    Nothing in this Order will alter the Parties' responsibility to comply with the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Southern District of New York regarding the preservation, collection, and production of data and any other discoverable materials.  To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure or other applicable laws or rules, those laws or rules will govern.  This Order will neither enlarge, reduce, nor otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under this Order is properly discoverable, relevant, or admissible in this litigation.  If there is a conflict between the provisions of this Order and any order governing discovery in this

litigation, including any applicable case management orders or the Stipulated Protective Order entered in this action, the provisions of those orders will control.

        d.      Nothing in this Order will be deemed to waive or limit any Party's right to object to production, discoverability, or confidentiality of data or any other discoverable materials.

        e.      To the extent compliance with this Order imposes an undue burden on either Party, the Parties will promptly confer to resolve the issue, and to the extent appropriate, may further agree to modify the ESI protocols to address such undue burden.

        f.      Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Local Rules, the Parties will attempt to resolve, in writing (including email), or by telephone or videoconference, disputes arising from this Order before filing a motion with the Court or otherwise seeking relief.  If the Parties cannot resolve the dispute after a good faith efforts, the parties may seek Court intervention in accordance with the Court's procedures.

    2.     **Preservation of ESI**.  Absent agreement of the Parties or further order of this Court, the following provisions will apply regarding the preservation of ESI:

        a.      Each Party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

        b.      Absent a showing of good cause by the Party requesting discovery (the "Requesting Party"), the categories of ESI identified in the attached Appendix 1 are not reasonably accessible and need not be preserved or searched in connection with ESI discovery.

        c.      The Parties will meet and confer regarding any categories of ESI that are claimed by a Party to be not reasonably accessible.

d.      Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

e.      Based on their current understanding that the following channels within the SGT SimulatorGolfTour Discord server, and any sub-channels or servers of them, are publicly accessible,[1] the Parties agree that ESI posted to the these channels, sub-channels, and servers are not deemed to be within the Producing Party's possession, custody, or control and, therefore, the Producing Party shall not be required to produce such ESI in discovery:

      i.          #sgt-rules

      ii.         #sgt-registration

      iii.        #obs

      iv.        #live-swing-video-setup

      v.         #sos-help-channel

      vi.        #handicaps-explained

      vii.       #tours-explained

      viii.      #tourney-tie-breakers

      ix.        #shanky-live-lessons

      x.         #custom-leagues-info

      xi.        #-buy-a-pc

---

[1] A number of Discord channels/servers identified in the Order contain emojis in their names. These emojis have been omitted from the Order.  Discord channel/server names may also change and be edited over time.  To the extent there is any doubt about what channels/servers are covered by § 2(e), the Parties will work together in good faith to identify the relevant channels/servers.

xii.        #gspro-tips

xiii.       #select-roles

xiv.        #logo-images

xv.         #-gspro

xvi.        #software-updates

xvii.       #public-beta-build

xviii.      #gspro-players-room

xix.        #-sgt-welcome

xx.         #new-courses-released

xxi.        #new-courses-discussion

xxii.       #looking-for-game

xxiii.      #looking-4-squad

xxiv.       #lfg-seniors

xxv.        #lfg-australia

xxvi.       #lfg-autoputt

xxvii.      #lfg-scramblepartner

xxviii.     #ladder-challenges

xxix.       #sgt-member-videos

xxx.        #uld-ultimate-long-drive

xxxi.       #general

xxxii.      #find-a-league

xxxiii.     #world-senior-gold-league

xxxiv.      #post-streams

xxxv.      #dogfight-general

xxxvi.     #dogfight-signup

xxxvii.    #dogfight-streams

xxxviii.   #blitz-introduction

xxxix.     #blitz-general-discussion

xl.        #blitz-elite-series

xli.       #blitz-open-events

xlii.      #blitz-4-man-winter-series

xliii.     #blitz-2-man-winter-shamble

xliv.      #blitz-no-layups

xlv.       #blitz-match-play

xlvi.      #lfg-cash-games

xlvii.     #blitz-live-calendar

xlviii.    #mashup-announcements

xlix.      #mashup-general

l.         #mashup-streaming

li.        #sgt-cup-live-calwendar

lii.       #announcements

liii.      #clans-live-calendar

liv.       #clans-announcements

lv.        #clans-discussion

lvi.       #looking-for-clan

lvii.      #general-discussion

lviii.    #hitting-mats-and-flooring

lix.      #screens-and-nets

lx.       #projectors-monitors-tvs

lxi.      #cameras

lxii.     #lighting

lxiii.    #sim-setups-and-recommendations

lxiv.     #computers-and-tech

lxv.      #room-layout-and-furniture

lxvi.     #accessories-and-other

lxvii.    #golfing-classified-for-sale-area

lxviii.   #golfind-classified-wtb

lxix.     #gc3-blp-gc2-for-sale

lxx.      #uneekor-discussions

lxxi.     #gc2-hmt

lxxii.    #gc3-blp-discussion

lxxiii.   $quad-gchawk-discussion

lxxiv.    #skyrack-connection-help

lxxv.     #skytrack-connection-help

lxxvi.    #skytrack

lxxvii.   #skytrack_plus

lxxviii.  #r10-owners

lxxix.    #mlm2pro

lxxx.     #mlm2pro-connection-help

lxxxi.     #protee

lxxxii.    #nova

lxxxiii.   #square

lxxxiv.    #flightscope

lxxxv.     #gspro-open-api-discussion

lxxxvi.    #op-course-design

lxxxvii.   #beta-course-downloads

lxxxviii.  #beta-course-discussion

lxxxix.    #sos-gsp-help-video

xc.        #gsp-bug-reporting

xci.       #gsp-faq

xcii.      #reshade-help

xciii.     #crypto-stock-discussion

xciv.      #axius-core-iscussion

xcv.       #per4mance-institute

xcvi.      #introduction

xcvii.     #k2-golf-tees

xcviii.    #posted-videos

xcix.      #simcenter-discussion

c.         #tekbud

ci.        #rcperkinsjr

cii.       #therock21

ciii.      #jwheels9876

civ.     #drtwist

cv.      #rustydave

cvi.     #runpuddrun

cvii.    #pakman

cviii.   #ce-simgolf

cix.     #the-golf-boy

cx.      #botspam

If any of these Discord channels or sub-channels are not, or no longer are, publicly accessible, the Parties will work together in good faith to provide access to them and their ESI. Additionally, the Parties will work together in good faith to apply the protocols of this subparagraph (e) to other Discord channels/servers that may also be relevant or material, and that are publicly accessible or may be made accessible to the Parties, including without limitation SGT_site

f.    The Parties agree that they will not alter or delete, and that they will preserve, all messages (including direct messages) and files each Party and its employees, agents, and representatives posted, shared, or transmitted using any such publicly accessible third-party forums, including SGT SimulatorGolfTour Discord.  For the sake of clarity, the Parties' obligations are limited only to messages and files that a Party is under a duty to preserve under either Federal Rule of Civil Procedure 37(e) or common law.

g.    Notwithstanding the provisions of § 2(f), Defendant Chad Cooke may delete Discord posts he believes in good faith constitute spam, bullying, or pornography, that he is required as a Discord server moderator to delete, provided that, prior to deletion, Mr. Cooke takes a screenshot or makes other documentation of the posts deleted and provides all such

screenshots to his counsel prior to the close of fact discovery. Counsel for the SGT Defendants will review such screenshots prior to the close of fact discovery and then produce, at minimum, any determined to be responsive to any discovery request.

h.    For the sake of clarity, the provisions of § 2 do not relieve any Party of its obligation to produce such ESI if the Party intends to rely on it at trial or in support of any motion or pleading.

3.    **Collection of ESI**.  Absent agreement of the Parties or further order of this Court, the following provisions will apply regarding the collection of ESI:

a.    **Scope of Discovery**.  The discovery requests will govern the scope of documents to be produced, subject to any agreements reached during the Parties' conferral, and search terms do not supplant discovery requests.  Nothing in this provision is an agreement as to the scope or appropriateness of each Party's discovery requests, and the Parties reserve the right to object and respond to the discovery requests and may agree or disagree as to the scope of each party's specific requests.

b.    **Identification of ESI Custodians**.  TrackMan, the GSP Defendants, and the SGT Defendants will, on or before thirty (30) days from the entry of this Order, identify the Party's individuals whose files are most likely to contain documents relating to the subject matter of this litigation.

c.    **ESI Sources**.  The Parties will, on or before thirty (30) days from the entry of this Order, identify, (a) for each ESI custodian identified under § 3(b), all custodial sources that may contain potentially relevant information, and (b) any non-custodial sources that may contain potentially relevant information.  Parties are to meet and confer in good faith should any disagreement regarding sources arise.

4.    **Search and Review of ESI**.  Absent agreement of the Parties or further order of this Court, the following provisions will apply regarding the search and review of ESI:

a.    **General Standards**.  The Parties will cooperate in good faith regarding the identification, disclosure, and formulation of appropriate date ranges, and custodial sources of ESI with the shared goal of identifying and exchanging relevant material and in a manner that is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

b.    **Disclosure of Search Terms**

i.    For custodial and non-custodial sources, each Requesting Party will propose search terms fourteen (14) days after the identification of ESI sources.  The Parties agree that the search terms must be tailored to the issues in this case, and the Parties retain the right to object to search terms as irrelevant, overly broad, unduly burdensome, or not proportional to the needs of the case.  The Parties retain the right, upon reviewing the initial production of documents and conducting other investigation and discovery, and showing good cause, to request additional search terms.  The Parties will meet and confer regarding additional search terms to the extent necessary.

ii.    To the extent the Party producing discovery (a "Producing Party") objects to any search term in part or in its entirety, the Producing Party is to provide its objections along with their bases and counterproposals to the Requesting Party no later than fourteen (14) days after receipt the Requesting Party's proposal, and the Parties are to meet and confer no later than ten (10) days after.  If, after a good faith attempt to meet

11

and confer, the Parties cannot come to an agreement, the Parties will submit the terms to the Court in the form of a joint discovery letter setting forth each Party's positions with respect to each disputed search term. Such a letter, if necessary, will be submitted within fourteen (14) days of the completion of the meet-and-confer process.

c.     **Limitation on Searching Backup or Inaccessible Systems**. No Party is required to search or collect materials from backup or archival systems and devices, including those listed in Appendix 1, absent good cause shown. No Party is required to upgrade its technology suite for the purposes of document collection or discovery.

d.     **Date Limitations**. The Parties agree that they will negotiate date limitations on a search term-by-search-term basis.

e.     **Continuing Obligations**. The Parties will continue to meet and confer in good faith regarding any discovery-related issues as necessary and appropriate. This Order does not address or resolve any other objection to the scope of the Parties' respective discovery requests, and it does not prevent any Party from undertaking searches of its own ESI for its own purposes at any time.

5.     **Production of ESI**

a.     **Format of Production**. All production images can be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor. The imaged data will retain all attributes of the native file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will show all text and

images that are visible, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent available within a document in its native file format, will, to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Documents that are difficult to produce in TIFF because of technical issues, or any other documents that are impracticable to produce in TIFF format, may be produced in their native format with a placeholder TIFF image stating, "Document Produced Natively." The Producing Party retains the option to produce ESI in alternative formats, which may include native format, or a combination of native, TIFF, or PDF formats, if so agreed by the Requesting Party or if necessary due to compatibility issues and/or production capability with the parties respective e-discovery review platforms. The parties agree to work together in good faith should such issues arise.

       b.    **Format - Native Files**. ESI will be produced as TIFF images consistent with the format described in § 5(a) with an accompanying load file, which will contain, among other data points, the ESI data points listed in the attached Appendix 2. The exception to this rule will be spreadsheet-application files, personal databases, multimedia audio/visual files such as voice and video recordings, and any other file type that cannot be produced as TIFF images, for which all ESI items will be produced in native or other agreed upon format upon reasonable request. When producing the above file types in native format, the Producing Party will produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file will include NativeFile information for each native file that is produced. Through the pendency of the litigation, the Producing Party will exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

c.      **Compressed File Types**.  Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted**.**

d.      **Encryption**.  To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the Producing Party will transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

e.      **Redactions**.  To the extent native spreadsheets require redactions, unless technologically unfeasible, a native redaction tool will be used to implement the redactions and will be produced in native format.

f.      **Metadata**.  All ESI will be produced with a delimited, database load file that contains the metadata fields listed in the attached Appendix 2.  Such metadata will be provided to the extent it exists and can be reasonably retrieved.  The Parties are not required to create any metadata.

g.      **De-Duplication**.  Each Party will reasonably endeavor to remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field will not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents is not acceptable.  De-duplication should be done across the entire collection (global de-duplication).

h.      **Email Threading**.  The Parties may use email thread suppression to avoid review of duplicate information.  Only the final-in-time email need be produced, provided that

14

all content in previous emails, including attachments and all email recipients, is contained within

the final email such that no unique content is removed as a result of the threading process.  For

avoidance of doubt, if a thread member contains any additional data that is not contained in the

final-in-time email (including without limitation attachments and all email recipients), it must be

separately produced.

    i.  **Parent-Child Relationships**.  The Parties agree that if any part of an

email or its attachments is responsive, the entire email and substantive attachments will be

produced, except any attachments that must be withheld or redacted on the basis of privilege or

work-product protection.  To the extent reasonably practicable and technologically possible, the

relationship between attachments, enclosures, embedded files, and/or exhibits to any parent

document will be preserved.  To the extent reasonably practicable and technologically possible

without undue burden or cost, the child document should be consecutively produced immediately

after the parent document.  Each document will be produced with the production number for the

first and last page of that document in the "BegBates" and "EndBates" fields of the data load file

and with the "BegAttach" and "EndAttach" fields listing the production number for the first and

last page in the document family.

    j.  **Continuous Message Threads**.  For purposes of this Order, "Continuous

Message Threads" refer to ongoing, conversational communications, such as text messages, chat

messages, or direct messages on social media or other platforms, where a single thread or

conversation between participants may span multiple topics without delineation.  This term does

not include emails or other forms of communication typically segmented by subject or organized

into discrete threads.  If any portion of a Continuous Message Thread is responsive to a

discovery request, the Producing Party shall be obligated to produce only that responsive portion

along with, at a minimum, the five (5) discrete messages (i.e., individual text bubbles, posts, or chat entries authored by a single party) immediately preceding and the five (5) discrete messages immediately succeeding the responsive portion, to provide context.  This obligation applies only to the extent such surrounding messages exist and are within the Producing Party's possession, custody, or control.  The Producing Party is not required to produce non-responsive portions of the thread beyond this context unless good cause is shown or it is otherwise agreed or ordered by the Court.

k.    **Password-Protected Files**.  The Parties will make reasonable efforts to ensure that encrypted or password-protected documents and ESI are opened and/or decrypted prior to running any search terms and/or TAR so they can be successfully processed for review and production.  To the extent encrypted or password-protected Documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such Documents.  To the extent security protection for such Documents and ESI produced in document families cannot be successfully processed despite reasonable efforts, the Producing Party will produce a slip-sheet placeholder in place of the encrypted file and populate the "Withheld Placeholder" metadata field.

l.    **Embedded Objects**.  To the extent reasonably practicable and technologically possible without undue burden or cost, substantive embedded files will be produced as attachments to the document that contained the embedded file, with the parent-child relationship preserved.  The substantive embedded files and the original document containing the embedded files will all be produced in accordance with the formats agreed upon herein (*e.g.*, Excel files as native files, etc.).

m.      Notwithstanding anything to the contrary herein, if a Party's document production will be less than 5,000 pages, images of that party's documents may be produced as bates-stamped .pdfs and the parties will meet and confer on the method of exchanging native files (e.g., emailing a copy, providing a downloadable copy via DropBox, Box, or similar reputable document sharing service), and such production shall be deemed sufficient.

n.      **Privileged Material**

i.      Documents withheld from a production pursuant to attorney-client, work product, or other applicable privilege or immunity will be identified on a privilege log with the information set forth in Local Civil Rule 26.2(a) or other information agreed upon by the Parties as sufficient for assessing a claim of attorney-client privilege, attorney work product, or other protection from disclosure.

ii.      With respect to information generated by, at the direction of, or for in-house or outside counsel after the filing of the Complaint (ECF No. 1), the Parties are not required to include any such information in privilege logs, absent good cause shown. In addition, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rule of Civil Procedure 26(b)(3)(A) and (B), absent good cause shown.

o.      **Privilege, No-Waiver, and Inadvertent Disclosure**

i.      The mere production of ESI will not itself constitute a waiver for any purpose.

ii.      The parties have separately agreed to a Protective Order provision providing for protection under Federal Rule of Evidence 502(d).  For the avoidance of doubt, that provision applies to ESI.

## <u>APPENDIX 1</u>

1.    Random access memory (RAM), temporary files, or other ephemeral data that are

difficult to preserve without disabling the operating system.

2.    Backup data that is substantially duplicative of data that is more accessible elsewhere.

3.    Data remaining from systems no longer in use that is unintelligible on the current

systems.

## APPENDIX 2

### ESI Metadata and Coding Fields

| Field Name[2] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| BegBates | All | Beginning page Bates number. |
| EndBates | All | Ending page Bates number |
| BegAttach | All | Beginning page of attachment range (First production Bates number of the first document of the family). |
| EndAttach | All | Ending page of attachment range (Last production Bates number of the last document of the family). |
| AttachmentCount | Email | The number of attachments to an email. |
| AttachName | Email | The file name(s) of attachments to a parent document (separated by a semicolon) |
| Custodian | All | Custodian name (ex. John Doe). |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. (mm/dd/yyyy format) |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed[3] | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| ReceiveDate | Email | Date email was received. (mm/dd/yyyy format) |
| DateMod | Email, Edoc | Date the document was modified. (mm/dd/yyyy hh:mm:ss format)[4] |

---

[2] Field Names can vary from system to system and even between different versions of systems. Thus, the Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this Order.

[3] ESI items should be processed in a matter that preserves their existing time, date, and time-zone metadata.

[4] ESI items will be processed as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

| Field Name[2] (*Email, Edoc, Calendar, or All*) | Populated For | Field Description |
|---|---|---|
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. (mm/dd/yyyy hh:mm:ss format) |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocExt | Email, Edoc | File extension of the document. |
| File Size | Email, Edoc | Size (in kilobytes) of the source native file. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted.  Otherwise, blank. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Protective Order. |
| Page Count | All | Indicates the number of pages within the document |
| Production Volume | All | Production Volume Name |

SO STIPULATED AND AGREED.

Dated: February 13, 2025

GOODWIN PROCTER LLP

By: /s/ Stefan Mentzer
    Stefan Mentzer
    Scott. T. Weingaertner
    Timothy Keegan
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel. + 1 212 813 8800
smentzer@goodwinlaw.com
sweingaertner@goodwinlaw.com
tkeegan@goodwinlaw.com

*Attorneys for Plaintiff and Counterclaim-Defendant TrackMan, Inc.*

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: /s/ Caren Decter
    Caren Decter
    Jeremy S. Goldman
28 Liberty Street, 35th Floor
New York, New York 10005
Tel. +1 212 980 0120
cdecter@fkks.com
jgoldman@fkks.com

*Attorneys for Defendants and Counterclaim-Plaintiffs GSP Golf AB and Davor Bogavac*

FIRESTONE GREENBERGER PLLC

By: /s/ Jordan Greenberger
    Jordan Greenberger
225 West 34th Street, 9th Floor
New York, New York 10122
Tel. + 1 212 597 2255
jg@firegreenlaw.com

*Attorneys for Defendants and Counterclaim-Plaintiffs SimulatorGolfTour LLC and Chad Cooke*

SO ORDERED.

Dated: _____, 2025

_____
Hon. Naomi Reice Buchwald
United States District Judge