# Frankfurt Kurnit Klein + Selz PC

**Jeremy S. Goldman**

2029 Century Park East, Suite 2500N, Los Angeles, California 90067

T (310) 579-9611    F (347) 438-2156

jgoldman@fkks.com

June 24, 2025

**VIA ECF**

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Trackman, Inc. v. GSP Golf AB et al.*, **Case No. 1:23-cv-598-NRB**

Dear Hon. Judge Buchwald:

Defendants GSP Golf and Davor Bogavac ("GSP Parties") respectfully request a pre-motion conference under Rule 2(B) of Your Honor's Individual Practices regarding Plaintiff Trackman, Inc.'s refusal to search the email files of three senior executives for documents relevant to its damages claim.

This case involves competing golf simulation software that allows users to play virtual rounds of golf using real clubs and balls. TrackMan alleges copyright infringement based solely on Defendants' alleged use of TrackMan's software (Perfect Golf), not its hardware. ECF. 32 ¶ 51. TrackMan does not accuse the GSP Parties, who develop only software not hardware, of infringing any physical equipment. Yet, in response to an interrogatory regarding Trackman's damage theory, TrackMan asserted that it may seek damages "in excess of $30 million" based on alleged lost software *and* hardware sales. *See* Ex. A. That extraordinary theory, seeking massive damages for unalleged hardware infringement, entitles Defendants to probe the factual basis of the claim through discovery.

The GSP Parties asked TrackMan to search the email files of three senior executives (CEO Klaus Eldrup-Jorgensen, CTO Frederik Tuxen, and Vice CEO Nikolaj Kromann Jorgensen) for documents mentioning the GSP Parties or their software (GSPro) in connection with the alleged lost sales. TrackMan refused,[1] arguing (1) that its existing mid-level custodians

---

[1] The parties engaged in extensive meet and confer correspondence on this issue, but reached an impasse. *See* Ex. B.

Honorable Naomi Reice Buchwald
June 24, 2025
Page 2

are sufficient, (2) that the request is cumulative and speculative, and (3) that the so-called "apex doctrine" bars this discovery.  None of these arguments withstand scrutiny under Rule 26.

Discovery under Rule 26 is intentionally broad.  It allows discovery of any nonprivileged matter relevant to a party's claim or defense, provided it is proportional to the needs of the case.  Courts in this District have emphasized that "there is no special rule that senior corporate executives are immune from discovery." *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 2018 WL 2215510, at *8 (S.D.N.Y. May 15, 2018).  While courts may scrutinize efforts to *depose* senior executives under the "apex doctrine," that principle does not bar document discovery and does not apply here.  *See Shiber v. Centerview Partners LLC*, 2023 WL 3071554, at *3 (S.D.N.Y. Apr. 25, 2023).  The relevant question is "whether the discovery sought is of sufficient importance to justify the burden and cost that additional discovery will impose." *Blackrock*, 2018 WL 2215510, at *9.  Here, it plainly is.

TrackMan's damages theory asserts that GSPro caused TrackMan to lose more than $30 million in software and hardware sales, even though GSPro is a software-only product and TrackMan's hardware is not being accused of infringement.  A loss of that magnitude would be material, amounting to nearly 20% of TrackMan's 2020 revenue and over 11% of its 2024 revenue.[2]  If such a loss actually occurred, and TrackMan genuinely attributed it to GSPro, this issue would have been discussed at the highest levels of the company.  If no such discussions occurred, that absence would strongly undermine the credibility of TrackMan's damages claim.  Either way, the senior executives' emails are a critical and uniquely probative source of evidence.

TrackMan's reliance on developers and product managers as custodians does not eliminate the need to search these executives' files.  The issue is not whether these mid-level custodians may also have relevant documents, but whether TrackMan's leadership ever treated this supposed $30 million loss as real.  Moreover, regardless of the designated custodians' titles or responsibilities, they are not the individuals most likely to reflect what TrackMan's top leadership believed about the cause or scope of any alleged losses.  If the executives' files contain no responsive documents or communications, that too is highly relevant.

Courts regularly compel executive-level searches in cases like this.  In *Oakley v. MSG Networks, Inc.*, 2024 WL 413903, at *3–4 (S.D.N.Y. Sept. 10, 2024), the court rejected the same cumulative and burden arguments that TrackMan raises here and ordered a limited search of a

---

[2] TrackMan's public financial statements from 2020 to 2024, available at https://datacvr.virk.dk/enhed/virksomhed/27352677, reflect year-over-year revenue growth (from DKK 1.01 billion to DKK 1.8 billion) and increased market share in golf simulators.  Where challenges are noted, they relate to macroeconomic conditions, inflation, supply chain delays, and currency fluctuations.  The reports do not mention GSPro or attribute any lost sales to it.

Honorable Naomi Reice Buchwald
June 24, 2025
Page 3

CEO's emails for relevant documents.  TrackMan has attempted to distinguish *Oakley* on the ground that the executive there was an eyewitness, but that misses the point.  The *Oakley* court authorized discovery not merely because the executive was present but because the limited search concerned a central issue, and the executive was likely to have relevant information.  The same is true here.

Finally, the burden of the requested search is minimal.  The GSP Parties propose a targeted search using a single keyword ("GSPro") across just three custodians.  Given that GSPro is a software-only product and not a direct competitor to TrackMan's hardware-focused business, and that these are high-level executives, the search is unlikely to yield a large volume of documents.  TrackMan has identified no technical barrier or cost-based objection.

TrackMan put this issue squarely in play.  By advancing a sweeping and speculative theory that a software-only competitor caused $30 million in software and hardware-related losses, TrackMan opened the door to reasonable discovery into whether that claim was ever raised or taken seriously at the highest levels of the company.  The GSP Parties are entitled to targeted discovery to test that theory and defend themselves against it.

For these reasons, the GSP Parties respectfully request a Rule II(B) pre-motion conference with the Court to address this dispute.

                                                    Respectfully submitted,

                                                    Jeremy S. Goldman

cc:   All counsel of record (via ECF)